UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

AMIL DINSIO,

                                    Plaintiff,

                                                            DECISION AND ORDER

                                                            05-CV-6159L

                v.

THE FEDERAL BUREAU OF INVESTIGATION,
THE UNITED STATES DEPARTMENT OF JUSTICE,
THE UNITED STATES ATTORNEY GENERAL,

                                    Defendants.

———————————————————————————

        Plaintiff, Amil Dinsio ("Dinsio"), appearing *pro se*, filed the complaint in this action under

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Federal Bureau of

Investigation ("FBI"), the United States Department of Justice ("DOJ"), and the Attorney General

of the United States.  He seeks an order directing defendants to release certain records that plaintiff

alleges defendants have wrongfully withheld from him.[1]  Defendants have moved for summary

judgment.  Plaintiff has cross-moved for partial summary judgment and has filed a number of other

motions seeking various relief.

———————————————

        [1]To the extent that plaintiff seeks records containing personal information about himself,
his complaint could also be construed to assert a claim under the Privacy Act, 5 U.S.C. § 552a.
*See Bechhoefer v. United States Dep't of Justice, Drug Enforcement Admin.*, 209 F.3d 57, 62 (2d
Cir. 2000).  Although there are some differences between FOIA and the Privacy Act, *see*, *e.g.*,
*Louis v. United States Dep't of Labor*, 419 F.3d 970, 978 n. 7 (9th Cir. 2005) (differences in
scope of certain exemptions); *MacPherson v. I.R.S.*, 803 F.2d 479, 482 (9th Cir. 1986) (noting
different purposes of the two acts), none of them have any bearing on the issues presented in this
action, so the Court will generally discuss only FOIA.  *See Hill v. United States Air Force*, 795
F.2d 1067, 1069 n. 4 (D.C.Cir. 1986) (search standard same for both FOIA and Privacy Act).

## BACKGROUND

Dinsio filed a FOIA request with the FBI in 1974, seeking records that the FBI had compiled concerning plaintiff. At the time, plaintiff was serving a federal sentence for conspiracy to burglarize a bank and for bank larceny.[2] The FBI released numerous documents to plaintiff in 1977. Complaint ¶ 2.

In 1994, Dinsio filed another FOIA request with the FBI, seeking records that would "show that FBI agents burglarized" Dinsio's garage at his home in Ohio in 1972. Dkt. #15-4 at 3. Dinsio alleges that his daughter (who is an attorney) had discovered evidence of such a burglary when in late 1993 she reviewed the records that plaintiff had received through his 1974 FOIA request. Complaint ¶¶ 7, 8. Dinsio's 1994 request related to his attempt to establish that his conviction had been unconstitutionally obtained through the unlawful actions of the FBI agents. Dkt. #15-4 at 2.

On December 3, 1999, the FBI informed Dinsio that "[t]he only records located by searches of the indices to [the] Central Records System at FBI Headquarters were [Dinsio's] previous Freedom of Information-Privacy Acts requests and [the FBI's] responses." *Id.* at 17. Plaintiff contends that he attempted to administratively appeal this decision, but got no response. Complaint ¶¶ 18-20.

In February 2005, Dinsio filed a third FOIA request with the FBI, seeking "any and all records complied [sic] on [him] from the year 1980 to the present date." Complaint Ex. G. On May 9, 2005, the FBI informed Dinsio by letter that it had "located material which appear[ed] to be

---

[2]The facts concerning the 1972 bank burglary (which involved blowing a hole through the roof of the bank building) and the investigation that led to Dinsio's arrest are set forth in *United States v. Mulligan*, 488 F.2d 732 (9th Cir. 1973), and *United States v. Barber*, 495 F.2d 327, 328 (9th Cir. 1974). Plaintiff is currently serving a sentence for a New York conviction of robbery in the second degree, criminal use of a firearm in the first degree, and kidnapping in the second degree. *See People v. Dinsio*, 286 A.D.2d 517 (3d Dep't 2001), *leave to appeal denied*, 97 N.Y.2d 703, *cert. denied*, 536 U.S. 942 (2002).

responsive to [Dinsio's] request," and advising him that "regulations require us to notify requesters when anticipated charges may exceed $25." Dkt. #15-4 at 25. The letter asked Dinsio whether he would agree to pay the fees, or if he wanted to narrow the scope of his request to reduce the amount of the fee. The letter concluded, "If you fail to respond within thirty days from the date of this letter, your request will be considered closed administratively." Defendant contends, and Dinsio does not appear to deny, that he never responded to this letter.

Plaintiff commenced this action in April 2005. He seeks judicial review of the FBI's alleged withholding of the records that plaintiff believes exist concerning the alleged burglary and other misconduct by FBI agents in connection with the investigation and prosecution of plaintiff for the 1972 bank burglary and larceny. There are two causes of action in the complaint, the first relating to Dinsio's 1994 FOIA request, and the second to his 2005 request.

## DISCUSSION

### I. General Principles

"FOIA requires that 'each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules ..., shall make the records promptly available to any person." *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir. 1999) (quoting 5 U.S.C. § 552(a)(3) (1994)). "FOIA requires the fullest possible public disclosure of government-kept records, but at the same time maintains the confidentiality of some information based on narrowly tailored exemptions intended to protect certain interests." *Peltier v. F.B.I.*, No. 03-CV-905, 2005 WL 735964, at *3 (W.D.N.Y. Mar. 31, 2005).

"FOIA clearly contemplates judicial review of agency decisions to withhold information and provides that a reviewing court 'shall determine the matter *de novo* [...], and the burden is on the agency to sustain its action." *Halpern*, 181 F.3d at 287 (quoting 5 U.S.C. § 552(a)(4)(B)). To

prevail on a motion for summary judgment in a FOIA case, the agency must show that its search for the requested materials was adequate and that any documents withheld fall within an exemption to FOIA. *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.) *cert. denied*, 513 U.S. 823 (1994).

"Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.* There is a presumption of good faith regarding affidavits submitted by a government agency, which "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc., v. Security and Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Therefore, the court may award summary judgment if the agency's affidavits are "adequate on their face." *Carney*, 19 F.3d at 812.

Unlike "the usual question raised in FOIA litigation," *i.e.*, "whether the information withheld properly falls within the scope of the exemptions," *Halpern*, 181 F.3d at 287, the issue here is whether any information actually *was* withheld from plaintiff. Defendants contend that the FBI conducted an adequate search but that, in response to plaintiff's 1994 request for records pertaining to the alleged burglary of his home by FBI agents, the FBI found no records other than those that had already been produced in response to his first request twenty years earlier. Plaintiff, on the other hand, alleges that there are other pertinent records in the FBI's possession, and that defendants have simply refused to disclose them or acknowledge their existence.[3]

_____

[3]Defendants also contend that the FBI did find some records in response to plaintiff's 2005 request for "any and all records" compiled on Dinsio since 1980, but that plaintiff never responded to the FBI's letter about duplication fees. Plaintiff's only response appears to be his

(continued...)

## II. Exhaustion of Administrative Remedies

Before turning to the merits of plaintiff's claims, the Court must address defendants' assertion that Dinsio is barred from seeking relief under FOIA because he has failed to exhaust his administrative remedies. Specifically, defendants contend that there is no record that plaintiff ever administratively appealed the FBI's 1999 determination on his 1994 request, and that plaintiff never responded to the FBI's letter concerning payment of a copying fee on his 2005 request.

FOIA provides that request denials may be appealed to the heads of agencies, 5 U.S.C. § 552(a)(6)(A)(I), and individuals are required to exhaust this administrative remedy before filing suit. In the FOIA context, the exhaustion requirement is not jurisdictional, but is a "jurisprudential doctrine [that] precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258-59 (D.C.Cir. 2003) (quoting *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 61 (D.C.Cir. 1990)); *accord Kennedy v. United States Dep't of Homeland Security*, No. 03-CV-6076, 2004 WL 2285058, at *4 (W.D.N.Y. Oct. 8, 2004). In addition, a plaintiff may be deemed to have constructively exhausted his remedies if the agency fails to make a timely response to the initial request. *See Ruotolo v. Department of Justice, Tax Div.*, 53 F.3d 4, 8 (2d Cir. 1995); *see also* 5 U.S.C. § 552(a)(6)(A)(I) (providing that agencies shall respond to FOIA requests within twenty working days).

Here, it appears that the FBI did not even acknowledge receiving plaintiff's 1994 FOIA request until three years after it was filed. *See* Declaration of David M. Hardy (Dkt. #15-3) ¶¶ 6,

---

[3](...continued)
seemingly inexplicable assertion that "the defendants' May 9, 2005 letter had nothing to do with the plaintiff's February 14, 2005 request for records." Dkt. #19 ¶ 8. That letter clearly *does* relate to Dinsio's February 14 request, though, as it bears the number assigned to that request. *See* Dkt. #15-4 at 23, 25.

7 and Exs. A and B.  It took almost another three years for the FBI to inform Dinsio that it had found

no records in addition to those that had been produced in 1977, and that it was closing his request.

Hardy Decl. ¶ 12 and Ex. G.

Courts have held, however, that "[i]f the agency responds to the request after the twenty-day

statutory window, but before the requester files suit, the administrative exhaustion requirement still

applies." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Oglesby*, 920 F.2d

at 61-62; *Kennedy v. United States Dep't of Homeland Security*, No. 03-CV-6076, 2004 WL

2285058, at *4 (W.D.N.Y. Oct. 8, 2004).  Here, plaintiff did not file the complaint in this action

until 2005, years after the FBI's December 1999 letter advising him that it had unearthed no records

within the scope of his request that had not already been turned over to him.

There is an additional problem with that letter, however:  it did not advise plaintiff of his

right to appeal.  FOIA provides that the agency responding to a FOIA request must "notify the

person making such request of the right of such person to appeal to the head of the agency any

adverse determination ... ."  5 U.S.C. § 552(a)(6)(A)(I).  Where the agency's response does not

include notification of the right to appeal, constructive exhaustion may also be found.  *See Ruotolo*,

53 F.3d at 9 ("The Tax Division's response to the Ruotolos did not include notification of the right

to appeal and, consequently, there was no timely determination of the request.  Accordingly, the

Ruotolos are deemed to have exhausted their administrative remedies") (citing *Oglesby*, 920 F.2d

at 67).

From the wording of the statute, it is not obvious whether the agency's response must

*always* contain notice of the right to appeal, or only if the determination is "adverse."  In other

words, it is not clear whether the phrase "any adverse determination" is simply part of what must

be included in the notice (*e.g.*, "You have the right to appeal any adverse determination"), or

whether it is a condition that triggers the notice requirement.  The question is not entirely an

- 6 -

academic one, since it is debatable–from the FBI's standpoint, at least–whether its December 1999 determination was in fact "adverse" to plaintiff.

Again, from the FBI's standpoint, that agency already *had* given plaintiff all the records within its possession that fell within the scope of his request.  The FBI had not found any records in addition to those, but it was not withholding any records either.

Although plaintiff's first FOIA request, filed in 1974, does not appear to be in the record, it does seem that in his 1994 request Dinsio was looking for more than what he had gotten through the 1974 request.  Dinsio's 1994 request stated that he believed that his "convictions [we]re ... unconstitutional because the government committed a burglary at [plaintiff's] home in 1972" and that "[t]he agents committed perjury and fabricated FBI laboratory reports."  Dkt. #15-4 at 2.  He added that "[t]his request is not for a general review of my files" but was "a specific request for only" certain specified documents, such as laboratory reports that Dinsio believed had been referenced–but not provided to him–in the records turned over to plaintiff in 1977.  *Id.* at 3.

Given the wording of the 1994 request, I believe that the FBI's determination that it had found no additional records and was closing plaintiff's request was "adverse" to plaintiff, and that the letter advising him of that determination should therefore have included notice of plaintiff's appeal rights.  *See Oglesby*, 920 F.2d at 67 (agency's letter constituted an "adverse determination" because plaintiff did not receive the documents he requested; "The agency has a duty to notify appellant 'of the right ... to appeal to the head of the agency,' in cases where no records are found in its response as well as those in which specific records are denied") (quoting 5 U.S.C. § 552(a)(6)(A)(I)).  Accordingly, plaintiff is deemed to have exhausted his administrative remedies with respect to the 1994 request.  *Ruotolo*, 53 F.3d at 9.[4]

---

[4]Defendants contend that "[n]o record of an administrative appeal of the FBI response
(continued...)

I reach a different conclusion as to plaintiff's 2005 request, however.  Plaintiff does not appear to deny that he never responded to the FBI's request that he agree to pay copying fees.  FOIA requires the requester to follow each agency's rules for requesting, reviewing and paying for documents.  *See* 5 U.S.C. § 552(a)(3)(B) (conditioning the agency's obligation to make records "promptly available" upon the requester abiding by "published rules stating the time, place, fees (if any), and procedures to be followed").  "The constructive exhaustion provision ... did not relieve [plaintiff] of his statutory obligation to pay any and all fees which the agency was authorized to collect."  *Pollack v. Department of Justice*, 49 F.3d 115, 119 (4th Cir.), *cert. denied*, 516 U.S. 843 (1995); *Oglesby*, 920 F.2d at 66 (requester does not exhaust his administrative remedies "until the required fees are paid or an appeal is taken from the refusal to waive fees"); *Trueblood v. United States Dep't of Treasury, I.R.S.*, 943 F.Supp. 64, 68-69 (D.D.C. 1996) ("Regardless of whether the plaintiff 'filed' suit before or after receiving a request for payment, the plaintiff has an obligation to pay for the reasonable copying and search fees assessed by the defendant").  Plaintiff is therefore barred from seeking judicial review under FOIA with respect to his 2005 request.

---

[4](...continued)
from plaintiff was located during a search of the Department of Justice, Office of Information and Privacy ['OIP'] records."  Hardy Decl. at 5 n. 1.  *See also* Declaration of Priscilla A. Jones (Dkt. #17) ¶ 2 ("There is no record of OIP receiving an administrative appeal from Amil Dinsio concerning the denial of [his 1994 request] from the action of the Federal Bureau of Investigation").
        In their answer, however, defendants admitted plaintiff's allegations in the complaint that "[b]y letter dated December 23, 1999, the plaintiff appealed to the FOIPA [Freedom of Information and Privacy Acts] appeal section for the records" he had sought in his 1994 request and that "[o]ne year later, after receiving no reply to the appeal, on December 21, 2000, the plaintiff mailed a follow up appeal letter."  Complaint ¶¶ 18, 19; *see also* Complaint Exs. E and F; Defendants' Answer (Dkt. #7) ¶ 1.
        Although it is arguably not inconsistent to agree that plaintiff appealed to the FBI's FOIPA appeals section, yet maintain that no record of an appeal has been found in DOJ's records, defendants' admission of the complaint's allegations in this regard certainly also weighs against a finding of non-exhaustion.  *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout this litigation").

**III. Defendants' Motion for Summary Judgment**

In support of their motion, defendants have submitted declarations of David M. Hardy, the Section Chief of the FBI's Record/Information Dissemination Section, Records Management Division, and of Priscilla A. Jones, the Chief of DOJ's Administrative Staff in the Office of Information and Privacy.  Hardy states that he is "aware of the treatment that has been afforded" to plaintiff's 1994 and 2005 FOIA requests.  Dkt. #15-3 ¶ 3.  He recites the chronology of events concerning the filing and processing of those requests, and states that "[b]y letter dated December 3, 1999, the FBI advised plaintiff that the only records located by searches of the indices to our Central Records System at FBIHQ were his previous FOIPA requests and our responses.  Plaintiff was advised that FOIPA request number 383642-1 was being closed." *Id.* ¶ 12.  Jones's declaration relates only to whether plaintiff appealed from the FBI's decision on his 1994 FOIA request.

In my view, Hardy's declaration is not sufficiently detailed to entitle defendants to summary judgment.  To meet their burden, defendants must submit "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search ... ." *Carney*, 19 F.3d at 812.  The search "need not, and indeed could not be perfect," *Jones-Edwards v. Appeal Bd. of Nat'l Security Agency Central Security Agency*, 352 F.Supp.2d 420, 423 (S.D.N.Y. 2005) (quoting *Garcia v. United States Dep't of Justice, Office of Information*, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002)), but must be "reasonably designed to identify and locate responsive documents." *Garcia*, 181 F.Supp.2d at 368; *see also Jackson v. United States Attorney's Office*, 362 F.Supp.2d 39, 41 (D.D.C. 2005) ("When a plaintiff challenges the adequacy of the FOIA search conducted by an agency, the government is entitled to summary judgment only if it shows that the search conducted was 'reasonably calculated to uncover all relevant documents'") (quoting *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir. 1983)).

"A reasonably detailed affidavit, setting forth the search terms and the type of search

performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68.  Such an affidavit "should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993).

"An agency's affidavits will be inadequate, however, if they are conclusory and not relatively detailed." *Katzman v. C.I.A.*, 903 F.Supp. 434, 438 (E.D.N.Y. 1995) (citing *Weisberg*, 627 F.2d at 370.  "Accordingly, the affidavits should 'identify the searched files and describe at least generally the structure of the agency's file system' which renders any further search unlikely to disclose additional relevant information." *Katzman*, 903 F.Supp. at 438 (quoting *Church of Scientology v. I.R.S.*, 792 F.2d 146, 151 (D.C.Cir. 1986), *aff'd*, 484 U.S. 9 (1987)).

Here, Hardy has done little more than recite what is obvious from the correspondence between plaintiff and the FBI:  that Dinsio filed a FOIA request for certain types of documents and that several years later the FBI told him that it had not found any documents beyond those provided to him in 1977.  There is no explanation of what records were searched, or what search terms or methods were employed.  Hardy's declaration thus "falls well short of the required specificity," and "the absence of any description in [Hardy's] declaration of the scope and nature of the search ... makes it impossible for the Court to determine on this record as a matter of law that [the] search was reasonably calculated to recover all relevant documents." *Tarullo v. United States Dep't of Defense*, 170 F.Supp.2d 271, 275 (D.Conn. 2001).  The presumption of good faith that attaches to declarations submitted by a government agency is no substitute for the "reasonable detail" that those declarations must contain.

"Where, as here, an agency fails to establish through sufficiently detailed affidavits that its

search was reasonable, and the FOIA requester shows that the agency might have discovered a responsive document had the agency conducted a reasonable search, summary judgment should be denied." *Id.* Although I am not convinced that plaintiff has established that any responsive, but as-yet-undisclosed documents do exist, I conclude that this result is mandated here. I therefore deny defendants' motion as to the documents sought in plaintiff's 1994 request, but without prejudice. Defendants may renew their motion, and may be entitled to summary judgment, provided that they submit affidavits or declarations that meet the standards recited above. *See Katzman*, 903 F.Supp. at 439 (directing agency to submit more detailed affidavits).

## IV. Plaintiff's Motions

Plaintiff has filed a number of motions, including a motion for partial summary judgment, two motions for sanctions, and a motion to strike Hardy's and Jones's declarations, all based in large part on plaintiff's contention that the documents that he seeks do exist and that defendants are lying when they say that they have not located any additional records.

These motions are all denied. Plaintiff has not established that these alleged documents exist, that they are in defendants' possession, or that defendants are aware of their existence, nor has he shown that the FBI's search was inadequate. Plaintiff's motions for sanctions are also denied, both because of plaintiff's failure to comply with the "safe harbor" provision of Rule 11, *see* Fed. R. Civ. P. 11(c)(1)(A), and because the record does not show that defendants or their attorney have engaged in sanctionable conduct.[5]

---

[5]As an aside, I note that it is difficult to see what use plaintiff could make of the requested documents, even if they do exist and are produced, since he has apparently served his federal sentence in its entirety. In addition, it appears that plaintiff has already litigated *Bivens* claims in other district courts arising out of the alleged 1974 burglary of his garage by FBI agents, and that those claims have been dismissed, partly on the ground that the statute of

(continued...)

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #15) is granted in part and denied in part. Plaintiff's second cause of action is dismissed.  In all other respects, the motion is denied.

Plaintiff's motion for partial summary judgment (Dkt. #23), motions for sanctions (Dkt. #18 and #26), and motion to strike (Dkt. #19) are denied.  Plaintiff's motion for the Court to expedite its decision on defendants' motion for summary judgment (Dkt. #28) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 21, 2006.

---

[5](...continued)
limitations has expired.  *See* Dkt. #15-5 at 5-7; Dkt. #15-8 at 6; *Dinsio v. Chamberlain*, 1997 WL 634547 (D.C. Cir. Sept. 8, 1997).